IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| CURTIS MOORE | § | |
| v. | § | CIVIL ACTION NO. 5:11cv110 |
| BOWIE COUNTY, TEXAS, ET AL. | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Plaintiff Curtis Moore, proceeding through counsel, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. As Defendants, Moore named Bowie County, Texas; Sheriff James Prince; Community Education Centers, Inc.; and CiviGenics, Inc.

Moore asserted that he was denied medical care by the Defendants after sustaining injuries during his confinement in the Bowie County Correctional Center. The Defendants filed a motion to dismiss, and after review of the pleadings, the Magistrate Judge issued a Report recommending that the motion to dismiss be granted.

A. Moore's Objections

Moore raises five grounds in his objections to the Magistrate Judge's Report. These five grounds are: (1) the Report "imposes an 'evidence' standard that does not exist in the Rules applicable to a 12(b)(6) motion or the interpreting case law;" (2) the conclusions are shaped by a reliance solely on the information asserted by the Defendants and thus makes erroneous assumptions that serve as the basis for the conclusions; (3) the Report "fails to consider the possibility that the Defendants' policy to deny proper health care to Plaintiff over a period of six months amounted to

1

a constitutional violation, rather it assumes that obtaining two un-interpreted X-ray films over the course of six months equated to providing proper health care to an inmate suffering from reflex sympathetic dystrophy syndrome;" (4) the Report "fails to evaluate the corporate defendants under the propr legal standard for assessing private actor v. public actor in a constitutional violation question and by applying the 'judge-made requirement' that Plaintiff prove the actors' behavior was pursuant to an official policy;" and, (5) the Report analyzes the qualified immunity defense asserted by Sheriff Prince under a "pre-answer evidence standard" rather than evaluating the complaint under the "short and plain statement" standard of Rule 8 in determining whether it alleges a constitutional violation.  Moore states that these errors in findings and conclusions are reached by "application of an overly-rigorous treatment of the federal pleading standard to the Second Amended Complaint that calls for Plaintiff to produce evidence and overtly makes a credibility choice in favor of the Defendants' unsworn statements over the allegations in the complaint."

In addition, Moore states that additional information has now been obtained.  Specifically, he states that investigation has revealed that "CEC/CiviGenics" contracted with Bowie County to lease, operate, and manage the Bowie County Correctional Center, and that "CEC/CiviGenics" was obligated to implement policies and procedures for the provision of medical services to inmates of the facility.

B. The Response to Moore's Objections

The Defendants have filed a response to Moore's objections.  This response argues that: the Magistrate Judge's Report was correct; Moore failed to set out a valid §1983 claim against any of the Defendants; Moore's pleadings are conclusory and thus do not meet the pleading requirements; Moore incorrectly argues that it is not necessary to raise policy claims against private defendants; Moore failed to allege the requisite custom and improperly relies on vicarious liability; Moore failed to show deliberate indifference by any of the Defendants, he failed to set out a viable claim against CEC or CiviGenics; Moore failed to show official- or individual-capacity liability on the part of Sheriff Prince; and, the sheriff is entitled to qualified immunity.  In addition, the Defendants contend

that Moore raises only global allegations against the Defendants generally, without identifying specific actions by each defendant.

With regard to Moore's assertion of new information being discovered through investigation, the Defendants state that these factual allegations cannot be found in Moore's second amended complaint, and that when reviewing a motion to dismiss, the court looks only to the allegations of the complaint. They state that Moore is not entitled to amend his pleading in response to a motion to dismiss and that Moore failed to show why this evidence was not included in his prior pleadings.

C. Analysis of Moore's Objections

I. Lack of Evidence

Moore first contends that the Magistrate Judge concluded that he lacked "evidence," but that evidence is not required at this stage of the proceeding. He seeks to distinguish Henderson v. Anderson, slip op. no. 11-20233, 2012 WL 602656 (5th Cir., February 23, 2012), by arguing that case reviewed the sufficiency of summary judgment evidence and is therefore not applicable to a Rule 12(b)(6) motion.

The Magistrate Judge's statement to which Moore refers was that Moore, like the plaintiff in Henderson, "has presented only a conclusory claim, with no evidence as to the actual existence of an unconstitutional policy." While it is true that Henderson was a summary judgment appeal, the Magistrate Judge's statement simply reflects the fact that Moore cannot rely solely on conclusory allegations as to the existence of a policy, without a factual predicate. The Fifth Circuit stated in Spiller v. City of Texas City Police Department, 130 F.3d 162, 167 (5th Cir. 1997), that "the description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *See also* Fraire v. City of Arlington, 958 F.2d 1268, 1277 (5th Cir. 1992). While summary judgment evidence is not required at the 12(b)(6) stage, a level of pleading greater than mere conclusory assertions is required. Because Moore offered nothing beyond such conclusory assertions in support of his policy claims, the Magistrate Judge correctly recommended that the lawsuit be dismissed. Iqbal v. Ashcroft, 129 S.Ct.

at 1949 (pleadings that offer "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient, as are complaints providing naked assertions devoid of further factual enhancement).  This objection is without merit.

## II. Erroneous Assumptions and a Credibility Choice

Moore states that he has clearly pleaded that he suffered a foot injury that worsened into a swollen leg with damaged nerve and muscle tissue.  He states that he was denied medical care, which denial of care ultimately caused the amputation of his leg, and that aside from care which was essentially first aid, there was no medical intervention to the wound as it worsened.  Moore further states that he "clearly pleads the policy either created or followed by CiviGenics and CEC under their contract with the County denied him proper medical treatment for the next six to seven months."

However, Moore's pleadings contain nothing more than conclusory assertions that a policy existed, which conclusory assertions have been held insufficient to survive a motion to dismiss; the Supreme Court has explained that "while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual pleadings [citations omitted], a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do [citation and quote omitted]."  The Supreme Court went on to observe that factual allegations "must be enough to raise a right to relief above the speculative level" and that the pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right to relief.  Bell, 127 S.Ct. at 1964-65.

As the Defendants correctly note, Moore did not sue any of the medical providers.  Instead, he named the private corporation which ran the jail and its parent corporation, the Sheriff of Bowie County, and the county itself.  His pleadings consisted of global and conclusory allegations, asserting without factual support that a "policy" of denying medical care existed and lumping all of the Defendants together without pleading individual bases of liability.  Moore's contention that the Magistrate Judge improperly required him to present "evidence" is incorrect; rather, the Magistrate

4

Judge recommended dismissal based upon Moore's failure to plead anything more than "labels and conclusions."

Along these same lines, Moore states that he never alleged that his damages were caused by "misdiagnosis," but that the Magistrate Judge incorrectly "chose to accept the Defendants' pleadings that mischaracterize Plaintiff's allegations as misdiagnosis."  He states that

> An example of this choice is the analysis of the Second Amended Complaint's allegation of two hospital visits for x-ray films.  It is the Magistrate Judge's choice to insert assumptions into its analysis that the x-ray film was interpreted by a qualified physician and that Plaintiff's wound received proper medical treatment subsequent to the x-rays.  Any other assumption would lead to the conclusion of actual improper health care since mere x-rays alone are not a proper response to reflex sympathetic syndrome.

The Magistrate Judge set out the claims of the parties, including the assertion by the Defendants that Moore's damages were caused by misdiagnosis, but made no holding to this effect.  The Magistrate Judge did observe that the fact that Bowie County or CiviGenics employed the medical personnel who allegedly disregarded Moore's medical needs did not itself give rise to liability on the part of the county or the corporation, citing Colle v. Brazos County, Texas, 981 F.2d 237, 244 (5th Cir. 1993), and that Moore did not sue any medical personnel who would have been directly involved in any asserted denial of medical care.  While Moore argued that the Defendants had a "policy" of delaying or denying medical care in order to save money, so that the costs would be borne by other agencies in the criminal justice system, he conceded that he was sent to the emergency room on two separate occasions, which actions were hardly consonant with a policy of saving money by delaying or denying medical care.  Instead, Moore proffered the argument that sending him to the emergency room twice was a "delaying tactic" and that these trips did not show that he received proper medical care.  In effect, Moore contends that the county was willing to spend money to send him to the emergency room twice in furtherance of a policy not to spend money on detainees' medical care. His objection on this point lacks merit.

III. Policy Arguments

In his third objection, Moore contends that the Magistrate Judge erred in finding that his allegations of "policy" were conclusory because in fact, his description of the policy was concise and factual: "ongoing delay and denial of medical care to detainees in the custody of the sheriff."  Moore states that "there is nothing conclusory about either 'delay' or 'denial,' nor is the factual allegation vague that the policy was applied to detainees for economic purposes."  He seeks to contrast Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007), by stating that in that case, a pleading that there was an "unlawful agreement" was held to be conclusory; Moore argues that Bell would apply if he had pleaded only "an unconstitutional  policy," without his specific allegation of a county- or corporate-sanctioned policy of denial or delay in medical care.

Moore goes on to insist that "a single incident can support liability by proving the existence of an unconstitutional policy even where there has been no pattern of previous constitutional violations by a policymaker of a government entity," citing Brown v. Bryan County, OK, 219 F.3d 450, 460 (5th Cir. 2000), in which the Fifth Circuit held that "we think it is clear from the [Supreme] Court's decisions in [City of Canton, Ohio v. Harris, 489 U.S. 378 (1989)] and [Board  of County Commissioners of Bryan County, OK. v. Brown, 520 U.S. 397 (1997)] that under certain circumstances, §1983 liability can attach for a single decision not to train an individual officer even where there has been no pattern of previous constitutional violations."  In Brown, Bryan County, Oklahoma was found liable by a jury for failing to provide any training to a reserve deputy who was allowed to make arrests.  Stacy Burns, a young, inexperienced sheriff's deputy, participated in a car chase and arrest involving the use of force, without the benefit of training or supervision, resulting in severe injuries to the plaintiff.  The Fifth Circuit concluded that the evidence fairly allowed the jury to make a reasonable conclusion that the sheriff of Bryan County failed to train Burns in light of facts demonstrating an obvious need to train him, and that a reasonable inference could be drawn that the failure to train Burns was the moving force behind Brown's injuries; thus, the decision not to train Burns constituted a policy decision for which the County was liable under §1983.

The Magistrate Judge's Report, while not specifically citing Brown, stated that "the Fifth Circuit has held that a plaintiff may establish a custom or policy based on an isolated decision made in the context of a particular situation if the decision was made by an authorized policy-maker in whom final authority rested regarding the action ordered," citing Cozzo v. Tangihopa Parish Council- President Government, 279 F.3d 273, 280 (5th Cir. 2002).  However, the Magistrate Judge stated that Moore presented nothing more than conclusory allegations that any decision was in fact made by a final policy-maker sufficient to elevate the events in his case to the level of a custom or policy based on an isolated incident.  Nothing in Brown casts any doubt on this conclusion.

Moore also argues that his "policy" allegations were not conclusory, but "concise and factual," because "there is nothing conclusory about either 'delay' or 'denial,' nor is the factual allegation vague that the policy was applied to detainees for economic purposes." He contends that Bell is distinguishable because that case referred to "an unlawful agreement," which Moore likens to a claim of "an unconstitutional policy." This is incorrect because Bell arose under the Sherman Anti-Trust Act, in which "the crucial question ... is whether the challenged anti-competitive conduct stem[s] from independent decision or from an agreement, tacit or express." Bell, 127 S.Ct. at 1964, citing Theatre Enterprises Inc. v. Paramount Film Distributing Corp., 346 U.S. 537, 540 (1954). Thus, the existence of an "agreement" is a necessary part of a cause of action under the Sherman Act, and must be pleaded with specific facts rather than conclusions, just like the existence of a "policy" is a necessary part of Moore's cause of action and must be pleaded with specific facts rather than conclusions.  Like the plaintiff in Bell, Moore failed to meet this standard.  See Spiller, 130 F.3d at 167 (allegations that city police department had  "policies" of "operating in a manner of total disregard for the rights of African-American citizens" and "engaging in conduct toward African American citizens without regard to probable cause to arrest" were too conclusory to state a claim upon which relief could be granted); Walker v. Harris County, slip op. no. 11-20235, 2012 WL 1570673 (5th Cir., May 4, 2012) (citing Spiller in holding that "the description of a policy or custom

and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts").  Moore's objection on this basis is without merit.

Here, Moore's assertions that his pleading of a "policy" was "concise and factual" is likewise without merit.  Rather, his pleadings are akin to those which were held insufficient in Bell and Spiller as well as Barnes v. Madison, 79 Fed.Appx. 691, 2003 WL 22490383 (5th Cir., November 4, 2003) and McBarron v. Federal Bureau of Prisons, 332 Fed.Appx. 961. 2009 WL 1659221 (5th Cir., June 15, 2009).  *See also* Prince v. Curry, 423 Fed.Appx. 447, 2011 WL 1659493 (5th Cir., April 28, 2011) (claim that Tarrant County had a custom or policy of illegally sentencing sex offenders was "entirely conclusory"); Von Eschen v. League City, Texas, 233 F.3d 575 (Table), 2000 WL 1468838 (5th Cir., September 8, 2000) (pleadings that the defendants had "an unwritten custom or practice of condoning the use of excessive force," as shown by the fact that the defendants failed to address the officers' use of excessive force, were conclusory and thus not sufficient to establish municipal liability).

Moore states, again in a conclusory fashion, that the "policy" of which he complains "was one which incorporated objective deliberate indifference to the unconstitutional results which would inevitably follow."  He argues that to hold otherwise is to assume that the Sheriff was unaware of a serious accident in the jail despite the monthly reports he was supposed to be receiving from CEC/CiviGenics, that Moore's injuries were "somehow invisible for the entire length of time he was in Defendants' care after his injury occurred," and that during this same period of time, the Sheriff was uninformed of the needs of any detainees and was totally ignorant of what medical care they were receiving or not receiving.  These allegations are not sufficient to show the existence of a "policy" to delay or deny medical care. Moore's objection on this point are without merit.[1]

---

[1]Moore refers to the "reports" which he claims that CEC/CiviGenic were supposed to provide to the jail officials.  As noted above, these "reports" were mentioned for the first time in his objections, and thus are not properly before the Court.  Even if they were properly before the Court, Moore has wholly failed to show what information was supposed to be contained in these reports, much less whether or not they gave any notice of specific incidents involving individual inmates.

IV. Policy Requirements for Corporate Defendants

Fourth, Moore asserts that the proper standard to measure the actions of the governmental entities is whether they acted pursuant to an official policy, but that the standards for private actors, including CEC and CiviGenics, does not contain an official policy requirement.  Although he maintains that CEC and CiviGenics were acting under color of state law, he states that "the existence of an unconstitutional corporate policy is not a legal requirement for private actor liability under §1983."

Moore cites no authority for this proposition, which the Defendants maintain is "just wrong." In Olivas v. Corrections Corp. of America, 408 F.Supp.2d 251, 255 (N.D.Tex. 2006), aff'd 215 Fed.Appx. 332, 2007 WL 313597 (5th Cir., January 30, 2007), the Northern District of Texas stated as follows:

> It is appropriate to apply the common law standards that have evolved to determine §1983 liability for a municipal corporation to a private corporation; thus, a private corporation performing a governmental function [e.g. operating a prison or jail] is liable under §1983 only if three elements are found.  The first is the presence of a policymaker who could be held responsible, through actual or constructive knowledge, for enforcing a policy or custom that caused the claimed injury.  Second the corporation must have an official custom or policy which could subject it to §1983 liability.  And third, a claimant must demonstrate that the corporate action was taken with the requisite degree of culpability, and show a direct causal link between the action and the deprivation of federal rights.

Olivas, 408 F.Supp.2d at 255 (citations throughout the quote omitted).

On appeal, the Fifth Circuit noted that "contrary to Olivas' argument, CCA may not be held liable on a theory of respondeat superior," and went on to hold that "summary judgment was proper in the instant case because Olivas has not established that an official policy or custom caused a constitutional violation."

Similarly, the Western District of Louisiana has stated as follows:

> The test to determine liability for a private prison-management corporation under §1983 is more or less identical to the test employed to determine municipal or local government liability. See Phillips v. Corrections Corp. of America, No. 02-766, 2006 WL 1308142 at *3 (W.D.La., May 19, 2006); see also Monell v. Department of Social Services, 436 U.S. 658, 694 (1978).  That is, a private corporation is liable under §1983 only when an official policy or custom of the corporation causes or is the moving force of the constitutional violation.

9

Turks v. Wilkinson, civil action no. 09-cv-1181, 2010 WL 1740798 (W.D.La., April 8,. 2010, *Report adopted at* 2010 WL 1740789 (W.D.La., April 29, 2010).

Moore has failed to show that pleadings of an official policy are not required in claims against corporate defendants; in fact, the case law holds exactly the opposite.  His objection on this ground is without merit.

In the same objection, Moore asserts that "under the circumstances of this case where the corporate defendants are operating a detention facility under the requirements of state and federal law and within the confines of a contract with the governmental defendants, a conflict of interest exists between the defendants."  He does not explain what this conflict of interest might be, nor how it affects the proposed findings and conclusions of the Magistrate Judge.  Moore's objection on this point is without merit.

## V. Qualified Immunity

In his fifth objection, Moore asserts that the Magistrate Judge erred in concluding that Sheriff Prince is entitled to qualified immunity.  He stated that he has "clearly pleaded a violation of his constitutional right not to be punished prior to a determination of his guilt," but that in this case, he sustained a serious injury and repeatedly begged for medical treatment, but it was routinely denied.  Moore contends that this amounts to a violation of his due process rights under the Fourth Amendment based on the "minimal standards set under the Eighth Amendment for assessing cruel and unusual punishment."

According to Moore, his claims are "specific factual allegations" and not conclusory, and thus sufficient to overcome Sheriff Prince's assertion of qualified immunity.  In support of this assertion, he points to his claims that: he was injured; he repeatedly asked for treatment; he was refused attention by a physician for six months; and, that an MRI was denied even after six months.  Whether or not these claims amount to "specific factual allegations," however, none of them are directed at Sheriff Prince, nor do they show that the Sheriff had any involvement in or knowledge

of these alleged incidents.  Instead, these appear to be claims based on Sheriff Prince's position of authority, which is a claim of *respondeat superior* liability that is inapplicable in a §1983 lawsuit.[2]

Once a defendant has invoked the defense of qualified immunity, the burden is upon the plaintiff to demonstrate the inapplicability of the defense.  McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002).  The Fifth Circuit has stated that a district court must first find "that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." Backe v. LeBlanc, civil action no. 11-40460, 2012 WL 3517361 (5th Cir., August 16, 2012), *citing* Wicks v. Mississippi State Employment Services, 41 F.3d 991, 994 (5th Cir. 1995).  In this regard, the Fifth Circuit has specifically explained that "conclusory allegations and unsubstantiated assertions" are not sufficient to overcome the qualified immunity defense.  Miller v. Graham, 447 Fed.Appx. 549, 2011 WL 5031467 (5th Cir., October 24, 2011), *citing* Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007); Sylvester v. Cain, 311 Fed.Appx. 733, 2009 WL 423968 (5th Cir., February 20, 2009), *citing* Thompson v. City of Starkville, Miss., 901 F.2d 456, 469 n.13 (5th Cir. 1990).  Moore's conclusory allegations are insufficient to overcome Sheriff Prince's entitlement to qualified immunity for claims for damages made against him in his official capacity.  His objections are without merit.

D. Conclusion

The Court has conducted a careful *de novo* review of the pleadings in this case, as well as the Report of the Magistrate Judge and the Plaintiff's objections thereto.  Upon such *de novo* review,

---

[2]The Fifth Circuit has held that lawsuits against supervisory personnel based on their positions of authority are claims of liability under the doctrine of *respondeat superior*, which does not generally apply in Section 1983 cases.  Williams v. Luna, 909 F.2d 121 (5th Cir. 1990).  A supervisor may be held liable if there is personal involvement in a constitutional deprivation, a causal connection between the supervisor's wrongful conduct and a constitutional deprivation, or if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind a constitutional deprivation.  Thompkins v. Belt, 828 F.2d 298 (5th Cir. 1987).  In this case, Moore has shown none of the three prerequisites for imposing *respondeat superior* liability on Sheriff Prince.

the Court has concluded that the Report of the Magistrate Judge is correct and the Plaintiff's objections are without merit.  It is accordingly

ORDERED that the Plaintiff's objections are overruled and the Report of the Magistrate Judge (docket no. 49) is hereby ADOPTED as the opinion of the District Court.  It is further

ORDERED that the Defendants' motion to dismiss (docket no. 30) is GRANTED and the above-styled civil action be and hereby is DISMISSED with prejudice. It is further

ORDERED that any and all motions which may be pending in this action are hereby DENIED.

**It is SO ORDERED.**

**SIGNED this 21st day of September, 2012.**

MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE